# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| FURMINATOR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:06-CV-23 CAS |
| v. | ) | |
| | ) | |
| ONTEL PRODUCTS CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This patent and trademark infringement matter is before the Court on several motions: plaintiff

Furminator, Inc.'s motion to voluntarily dismiss its claims without prejudice and to dismiss remaining

defendants Munchkin, Inc. and Bamboo's (collectively referred to as "defendants" or "Munchkin")

declaratory judgment counterclaims; defendants' motion for summary judgment on their counterclaim

for invalidity of the claims of U.S. Patent No. 6,782,846 B1; and defendants' motion for leave to file

amended counterclaims.  Defendants have also filed motions for oral argument on their pending

motions.  The Court requested further briefing from the parties on the effect of a case decided by the

Federal Circuit Court of Appeals after initial briefing was concluded, and directed plaintiff to specify

whether it was seeking dismissal of this action with or without prejudice.[1]  The supplemental briefing

has been filed and this matter is now ready for decision.

For the following reasons, the Court will (1) grant plaintiff's motion to voluntarily dismiss all

claims and to dismiss defendants' declaratory judgment counterclaims, (2) deny as moot defendants'

---

[1]Plaintiff's motion to voluntarily dismiss stated that it was seeking to dismiss its claims *with* prejudice, but its reply memorandum referred to dismissal *without* prejudice.  The Court therefore requested clarification.  In the supplemental memoranda, both sides have offered their positions as to whether the dismissal should be with or without prejudice.

motion for summary judgment of invalidity; (3) deny defendants' motion for leave to file amended counterclaims; and (4) deny defendants' motions for oral argument.

**Background**.

The patent at issue in this case, No. 6,782,846 B1 (the '846 patent"), claims methods for removing loose hair from a pet using a grooming tool. Plaintiff filed suit on January 5, 2006, claiming that defendants were infringing the patent, infringing plaintiff's rights in the trademark "deshedding," and engaging in unfair competition.[2] On January 24, 2006, plaintiff filed a motion for preliminary injunction which sought to enjoin defendants' alleged infringement of the '846 patent and the "deshedding" trademark.

The Court granted plaintiff's request for expedited discovery and an early hearing on the motion for preliminary injunction, and set the preliminary injunction hearing for February 14, 2006. The parties engaged in significant pre-hearing discovery. Following the hearing, the Court issued Findings of Fact and Conclusions of Law which construed the claims of the '846 patent. The Court concluded, inter alia, that plaintiff had not shown it was likely to prove Munchkin had infringed any claim of its patent at trial, and had not shown that it had a valid and protectible trademark in the term "deshedding," which was generic. (See Findings of Fact and Conclusions of Law at 32-33, 39-42, Doc. 117, redacted version). The Court denied plaintiff's motion for a preliminary injunction in all respects.

On February 27, 2006, after the claim construction hearing, Munchkin filed its answer and counterclaims. Munchkin's counterclaims include counts seeking declaratory judgment for trademark

---

[2]Plaintiff also sued two other defendants, Ontel Products Corp and Linens 'N Things, Inc. On June 28, 2007, plaintiff filed a stipulation for dismissal of its claims against these two defendants, which the Court granted on June 29, 2007. (See Doc. 156.)

noninfringement, patent noninfringement, patent invalidity, and inequitable conduct and fraud on the U.S. Patent and Trademark Office. Munchkin also filed five non-declaratory judgment counterclaims.

Plaintiff appealed the preliminary injunction ruling to the United States Court of Appeals for the Federal Circuit on April 12, 2006. Plaintiff moved to stay the case pending appeal, with the consent of the parties, and the Court granted the motion to stay. (See Doc. 118). The Federal Circuit affirmed the denial of preliminary injunctive relief on January 16, 2007, and its mandate was filed with this Court on February 15, 2007. On February 21, 2007, the Court lifted the stay, ordered plaintiff to file its answer to the defendants' counterclaim within ten days, and stated that the case would be set for Rule 16 initial scheduling conference by separate order. (See Doc. 131).

On March 1, 2007, Munchkin filed a motion for summary judgment on the grounds that the claims of the '846 patent are invalid as anticipated by prior art devices under 35 U.S.C. §§ 102(a) and (b). (Doc. 132). On March 6, 2007, the Court set the case for Rule 16 conference on April 5, 2007. (Doc. 138). On March 23, 2007, plaintiff filed its motion to voluntarily dismiss all claims and to dismiss Munchkin's declaratory judgment counterclaims without prejudice. (Doc. 142). The Court granted plaintiff's motion for an extension of time to respond to Munchkin's summary judgment motion until after a ruling issued on plaintiff's motion to dismiss. The Court also vacated the Rule 16 conference setting. (See docket text orders of March 26, 2007, and April 5, 2007).

In the motion to dismiss, plaintiff asserts that it has given defendants the following covenant not to sue:

> FURminator releases and unconditionally covenants not to sue Munchkin, Inc. and/or Bamboo for infringement of U.S. Patent No. 6,782,846 (the "Porter Patent") based on Munchkin and/or Bamboo's manufacture, importation, use, sale, and/or offer for sale, of products on or before March 23, 2007. FURminator unconditionally covenants not to sue Munchkin and/or Bamboo for infringement of the Porter Patent based on Munchkin's and/or Bamboo's future manufacture, importation, use, sale,

and/or offer for sale, of any and all products being offered for sale on www.bamboopet.com/all_products/grooming/, the Bamboo website, as of March 23, 2007, as reflected in the attached Exhibit A.

FURminator releases and unconditionally covenants not to sue Munchkin, Inc. and/or Bamboo for trademark infringement of the mark DESHEDDING based on Munchkin and/or Bamboo's manufacture, importation, use, sale, and/or offer for sale, of products bearing such a mark on or before March 23, 2007. FURminator unconditionally covenants not to sue Munchkin and/or Bamboo for trademark infringement of the mark DESHEDDING based on Munchkin's and/or Bamboo's future manufacture, importation, use, sale, and/or offer for sale, of any and all products bearing such a mark being offered for sale on www.bamboopet.com/all_products/grooming/, the Bamboo website, as of March 23, 2007, as reflected in the attached Exhibit A.

Pl.'s Mot. Dismiss at 3.[3]

Plaintiff moves to dismiss its claims against Munchkin without prejudice under Rule 41(a)(2), Federal Rules of Civil Procedure, on the basis that it has given Munchkin a release of all claims of past infringement and a covenant not to sue. Plaintiff also moves to dismiss Munchkin's declaratory judgment counterclaims, asserting that the release and covenant not to sue divests the Court of subject matter jurisdiction over the counterclaims. Plaintiff asserts that in order for Munchkin to maintain a declaratory judgment counterclaim there must be an "actual controversy," and the release and covenant not to sue removes any controversy between the parties, citing Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc., 248 F.3d 1333, 1340-41 (Fed. Cir. 2001), and Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855 (Fed. Cir. 1999) (citing Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed. Cir. 1995)).

Munchkin opposes plaintiff's voluntary dismissal of this action, asserting that plaintiff simply wishes to avoid the "inevitable elimination of its patent" in light of Munchkin's pending motion for

---

[3]Exhibit A to the motion to dismiss is a twenty-three page color printout of the contents of Bamboo's Internet website as of March 23, 2007.

summary judgment of invalidity. With respect to the motion to dismiss its declaratory judgment counterclaims, Munchkin asserts that (1) the covenant not to sue is inadequate because it excludes at least one product that Munchkin has sold and intends to sell in the future, and (2) the Super Sack decision and its progeny, on which plaintiff relies, are no longer good law in light of the Supreme Court's decision in MedImmune v. Genentech, __ U.S. __, 127 S. Ct. 764 (2007), and the Federal Circuit's decision in SanDisk Corp. v. STMicroelectronics NV, 480 F.3d 1372 (Fed. Cir. 2007).

**Legal Standard**.

Federal Circuit law governs questions of patent law, while the law of the regional circuit applies to procedural questions that are not specific to patent law. See Madey v. Duke University, 307 F.3d 1351, 1358 (Fed. Cir. 2002). District courts have uniformly applied Federal Circuit law in patent cases when addressing the issue whether a covenant not to sue by the patent holder eliminates subject matter jurisdiction over declaratory judgment counterclaims. See, e.g., In re Rivastigmine Patent Litig., No. 05 MD 1661, 2007 WL 1154000, at *2 (S.D.N.Y. Apr. 19, 2007) (citing Merck & Co. v. Watson Labs., Inc., No. C.A. 05-658, 2006 WL 1537375, at *3 (D. Del. June 2, 2006)); SVG Lithography Sys., Inc. v. Ultratech Stepper, Inc., 334 F.Supp.2d 21, 26 (D. Mass. 2004); Synopsys, Inc. v. Ricoh Co., 343 F.Supp.2d 883, 888 (N.D. Cal. 2003); Arista Techs., Inc. v. Arthur D. Little Enters., Inc., 125 F.Supp.2d 641, 654 (E.D.N.Y. 2000)).

**Discussion**.

### A. Declaratory Judgment Jurisdiction: <u>MedImmune</u> and Subsequent Federal Circuit Decisions

The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The phrase 'case of actual controversy' 'refers to the type of "Cases" and "Controversies" that are justiciable under Article III.' <u>MedImmune</u>, 127 S. Ct. at 771; <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 240 (1937)." <u>Sony Electronics, Inc. v. Guardian Media Techs., Ltd.</u>, 497 F.3d 1271, 1283 (Fed. Cir. 2007) (parallel citations omitted).

In <u>MedImmune</u>, the Supreme Court held that a party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, "under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>MedImmune</u>, 127 S. Ct. at 771 (internal punctuation and quoted case omitted).

Following <u>MedImmune</u>, the Federal Circuit's most recent pronouncement on the standard for determining the existence of a case or controversy sufficient to warrant declaratory relief is in <u>Sony Electronics</u>. In that case, the Federal Circuit noted there is no precise test applicable to every case seeking such relief; as a result, courts must examine the facts and circumstances of each case to determine whether there is a substantial controversy of "sufficient immediacy and reality" to warrant relief:

> The Supreme Court has not articulated a bright-line rule for distinguishing those cases that satisfy the actual controversy requirement from those that do not. Indeed, it has stated that "[t]he difference between an abstract question and a

'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941). Instead of fashioning a precise test, the Supreme Court has required only that the dispute be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" MedImmune, 127 S. Ct. at 771 (quoting Aetna, 300 U.S. at 240-41). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas., 312 U.S. at 273.

Sony Electronics, 497 F.3d at 1283 (parallel citations omitted).

Prior to MedImmune, Federal Circuit case law required a party seeking declaratory relief to establish "both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." See, e.g., Super Sack, 57 F.3d at 1058 (quoting BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993)). The Supreme Court's opinion in MedImmune rejected the Federal Circuit's reasonable apprehension of suit test. SanDisk, 480 F.3d at 1380; see also Teva Pharm. USA, Inc. v. Novartis Pharm. Corp., 482 F.3d 1330, 1339 (Fed. Cir. 2007).

In SanDisk, the Federal Circuit applied MedImmune and stated that Article III jurisdiction may be met "where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do[.]" 480 F.3d at 1381. The court stated:

[W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy

will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

SanDisk, 480 F.3d at 1381.

The Federal Circuit's "post-MedImmune decisions, while not attempting to define the outer boundaries of declaratory judgment jurisdiction, have made clear that a declaratory judgment plaintiff does not need to establish a reasonable apprehension of a lawsuit in order to establish that there is an actual controversy between the parties." Sony Electronics, 497 F.3d at 1284. "A useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff." Benitec Australia, Ltd, v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007).

> The concepts of "adverse legal rights" and "legal risk," used in [prior] cases to describe the standard for jurisdiction require that there be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it. Without an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction.

Microchip Tech. Inc. v. Chamberlain Group, Inc., 441 F.3d 936, 943 (Fed. Cir. 2006).

"The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." Benitec, 495 F.3d at 1344 (cited cases omitted). "'If . . . a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support jurisdiction' at that time." Id. (quoting Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 96 (1993)). Once the burden to establish the existence of a case or controversy has been met, jurisdiction continues in the absence of further information to the contrary. Id. "The burden of bringing forth such further information may logically rest with the party challenging jurisdiction, but

the actual burden of proof remains with the party seeking to invoke jurisdiction." Id. (internal citation and cited cases omitted).

In this case, plaintiff's patent infringement claims were pending at the time Munchkin filed its declaratory judgment counterclaims. Because Munchkin had been charged with infringement of the '846 patent, there was necessarily a case or controversy adequate to support declaratory judgment jurisdiction at that time. See Benitec, 495 F.3d at 1345. The issue is whether Munchkin can meet its burden to establish that jurisdiction continues to exist. See id. at 1344.

Prior to MedImmune, the Federal Circuit held that subsequent events can divest a district court of subject matter jurisdiction. In Super Sack, it held that an unconditional agreement not to sue an alleged infringer as to any claim of the patents-in-suit, based upon products currently manufactured and sold by the alleged infringer, was sufficient to divest the district court of jurisdiction over the alleged infringer's counterclaims for noninfringement, invalidity and unenforceability. See Super Sack, 57 F.3d at 1059-60. The court concluded that "[t]he residual possibility of a future infringement suit based on [the alleged infringer's] future acts is simply too speculative a basis for jurisdiction over [its] counterclaim for declaratory judgments of invalidity." Id. at 1060. In Amana Refrigeration, Amana sued for a declaration of patent invalidity and noninfringement. The defendant covenanted not to sue Amana for infringement based on the patent-in-suit, with respect to any product that had been or was then currently advertised, manufactured or sold by Amana prior to the date of the covenant. 172 F.3d at 855. The Federal Circuit held that the covenant "divested the district court of jurisdiction, notwithstanding that at some indefinite point in the future, Amana might develop new products or the PTO might reissue the patent-in-suit with altered claims." Benitec, 495 F.3d at 1346.

In Benitec, the Federal Circuit noted that although neither Super Sack nor Amana has been expressly overruled, both decisions applied the disapproved "reasonable apprehension of immediate suit" test to determine whether subject matter jurisdiction existed over claims for declaratory judgment. Id. The Benitec decision clarifies that under the MedImmune standard, a covenant not to sue can still be sufficient to divest a trial court of subject matter jurisdiction over declaratory judgment claims.

In Benitec, the plaintiff sued for infringement of patents concerning RNA interference (RNAi) technology, and the defendant filed counterclaims seeking declarations of invalidity and unenforceability. 495 F.3d at 1342. The plaintiff subsequently sought dismissal on the basis that it had no viable infringement claims against the defendant after the Supreme Court's decision in Merck KgaA v. Integra Lifesciences I, Ltd., 545 U.S. 193 (2005).[4] Benitec, 495 F.3d at 1343. The defendant objected to dismissal, arguing that jurisdiction still existed because it intended to expand its technology to cover products that would be allegedly infringing. Id. at 1348. The district court dismissed the complaint without prejudice and the counterclaims for lack of jurisdiction. Id. at 1343. During the appeal, the plaintiff stipulated in its brief that it "covenants and promises not to sue [defendant] for patent infringement arising from activities and/or products occurring on or before the date dismissal was entered in this action[.]" Id.

---

[4]In Merck, the Supreme Court gave an expansive reading to the pharmaceutical research exception of 35 U.S.C. § 271(e), holding that § 271(e)(1) "exempted from infringement *all* uses of patented compounds 'reasonably related' to the process of developing information for submission under *any* federal law regulating the manufacture, use, or distribution of drugs." 545 U.S. at 206. Benitec, the patentee, argued that under the Merck decision it had no presently viable infringement claim against the defendant. The parties agreed that under § 271(e)(1) and Merck, the defendant's activities related to the human medical application of RNA interference technology was not infringing and could not become infringing until it filed a new drug application with the U.S. Food and Drug Administration. See Benitec, 495 F.3d at 1346.

Applying the MedImmune standard, the Federal Circuit upheld the dismissal of the defendant's counterclaims for lack of subject matter jurisdiction, concluding there was no "substantial controversy, between [the parties], of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 1349. The defendant's activities as related to the patent-in-suit did not present a case or controversy of sufficient immediacy and reality to warrant declaratory judgment jurisdiction where its activities were not currently infringing and would not become infringing until it took additional action not planned for several years in the future. Id. at 1346.

The Federal Circuit concluded that Benitec's request for dismissal and subsequent covenant not to sue, made after Benitec determined that the Merck decision precluded an infringement claim, negated any controversy between the parties concerning infringement by the defendant in its development of human applications of RNAi technology. Id. at 1347-48. The Federal Circuit distinguished the SanDisk case, in which it held that a statement by the patentee's vice president that it had no plan to sue SanDisk did not eliminate the justiciable controversy created by the patentee's actions, where the patentee had shown by other actions that it had a willingness to enforce its patent rights.[5] Id. at 1347-48.

---

[5] In Sony Electronics, 497 F.3d 1271, the Federal Circuit explained why the patentee's statement in SanDisk, that it did not presently intend to sue the alleged infringer, did not preclude declaratory judgment jurisdiction in light of the patentee's actions:

In SanDisk, we held that a district court had jurisdiction over a suit requesting a declaration that a patent was invalid and not infringed even though the patentee had not threatened the declaratory judgment plaintiff with an infringement suit. There, the patentee--prior to the filing of the complaint--presented the plaintiff with "a detailed presentation which identified, on an element-by-element basis," the manner in which the patentee believed that the plaintiff's products infringed specific claims of the patentee's patents. Id. at 1382. In addition, the patentee "liberally referred to [the plaintiff's] present, ongoing infringement of [the] patents and the need for [the plaintiff] to license those patents." Id. The patentee also presented the plaintiff with "a packet of materials, over 300 pages in length, containing, for each of [the] fourteen

The Federal Circuit also concluded in Benitec that the defendant's claimed future plans to engage in allegedly infringing activities which were not subject to § 271(e)(1) did not establish the existence of declaratory judgment jurisdiction, as the defendant had not shown that its discussions regarding expansion into potentially infringing products "meet the immediacy and reality requirement of MedImmune." Benitec, 495 F.3d at 1348-49. The defendant had submitted the declaration of its president which stated that defendant wished to expand its efforts into animal husbandry and veterinary technology, and had "entered into discussion" with an unspecified "supplier of breeding stock" which included a meeting and the execution of a confidentiality agreement between the parties. The declaration stated that the defendant "expects work and research involving RNAi technology will commence shortly." Id. at 1349.

---

patents under discussion, a copy of the patent, reverse engineering reports for certain of [the plaintiff's] products, and diagrams showing a detailed infringement analysis of [the plaintiff's] products." Id. The plaintiff, on the other hand, disagreed with the patentee's analysis and maintained that it did not need a license. We held that such circumstances evinced an actual controversy within the meaning of the Declaratory Judgment Act.

In so holding, we declined to hold that the patentee's earlier statement that it had "absolutely no plan whatsoever to sue" the plaintiff somehow eliminated the controversy and thus prevented the plaintiff from maintaining a declaratory judgment suit. Id. at 1382-83. We also declined to hold that the patentee's apparent continued willingness to engage in licensing discussions prevented the plaintiff from maintaining a declaratory judgment suit. Id. at 1382 n.3 ("[A] party to licensing negotiations is of course within its rights to terminate negotiations when it appears that they will be unproductive."). Instead, we recognized that "jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." Id. at 1381. Accordingly, we did not require the plaintiff to put itself at further risk by continuing to engage in the allegedly infringing activity before seeking a declaration of its rights.

Sony Electronics, 497 F.3d at 1284.

There was no evidence in <u>Benitec</u> that the defendant had made or sold any infringing products. The Federal Circuit concluded that defendant's declaration did not indicate that its desire to expand into animal markets had "yet produced any definite offer which the unnamed 'supplier of breeding stock' could accept." <u>Id.</u> at 1348. Thus, the defendant had not shown it was engaged in any "use" of the patented invention that could subject it to a claim of infringement by the patent holder. <u>Id.</u> The Federal Circuit concluded that mere discussions and execution of a confidentiality agreement with an unnamed potential customer, and an expectation to begin work shortly, was insufficient to meet the immediacy and reality requirement of <u>MedImmune</u> necessary to support a justiciable controversy. The Federal Circuit concluded that there was no controversy between the parties concerning infringement by the defendant, and stated that "to allow such a scant showing to provoke a declaratory judgment suit would be to allow nearly anyone who so desired to challenge a patent." <u>Id.</u> at 1349.

Most recently, in <u>Sony Electronics</u>, 497 F.3d 1271, the Federal Circuit reversed the district court's dismissal of declaratory judgment claims of invalidity in a case concerning "V-chip" parental-rating control technology, concluding that an actual controversy did exist between the parties. In contrast to the present case, there was no covenant to sue in <u>Sony Electronics</u>, so the Federal Circuit's focus was on the parties' actions prior to the filing of the declaratory judgment claims.

Before Sony filed suit for declaratory relief, the parties had taken adverse positions regarding whether Sony's products infringed the patents.[6] Over an extended period of time, the patent holder

---

[6]The <u>Sony Electronics</u> opinion actually discusses the dismissal of several separate declaratory judgment actions that had been consolidated by the district court. The underlying facts were only slightly different as to each declaratory judgment plaintiff, and are similar enough that discussion of the Federal Circuit's reasoning with respect to Sony accurately reflects the holding of the case as a whole.

had submitted multiple demand letters to Sony, communicating its position that certain identified Sony products infringed the patents, including "detailed infringement analyses, which compared, on a limitation-by-limitation basis, a number of the claims of the . . . patents to specific Sony products." Sony Electronics, 497 F.3d at 1285. The patent holder also alleged that its infringement analyses applied to all other products sold by Sony with parental-rating control technology, and claimed entitlement to over $30 million in royalties. In sum, the patent holder's clear and firm position was that its patents were valid and infringed by Sony, and that it was entitled to past and future royalties. Id. Sony's position was that the patents were invalid and unenforceable as a result of laches and equitable estoppel. The parties had negotiated in person over the patent holder's claims but reached no accord. At the time suit was filed, the patent holder had not threatened to sue Sony. Id.

The Federal Circuit concluded that an actual controversy existed between Sony and the patent holder which was "without a doubt, 'definite and concrete, touching the legal relations of parties having adverse legal interests.'" Sony Electronics, 497 F.3d at 1285 (quoting Aetna, 300 U.S. at 240-41). The court explained the factors which led to its conclusion:

> Nothing about this dispute makes it unfit for judicial resolution. Sony does not request "an opinion advising what the law would be upon a hypothetical state of facts." [Aetna, 300 U.S.] at 241. Indeed, [the patent holder] has explicitly identified the patents it believes that Sony infringes, the relevant claims of those patents, and the relevant Sony products that it alleges infringe those patents. Sony has identified the specific prior art references that it believes render the asserted claims invalid. In the words of the Supreme Court, the parties' dispute "is manifestly susceptible of judicial determination. It calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." Id. at 242.

Sony Electronics, 497 F.3d at 1285. Summarizing its conclusion that declaratory judgment jurisdiction existed, the Federal Circuit stated, "In short, because [the patent holder] asserts that it is owed royalties based on specific past and ongoing activities by Sony, and because Sony contends

that it has a right to engage in those activities without a license, there is an actual controversy between the parties within the meaning of the Declaratory Judgment Act." Id.

**B. Application of MedImmune, Benitec, and Sony**

I.

A covenant not to sue can still divest a trial court of subject matter jurisdiction over declaratory judgment claims under the applicable MedImmune standard. See Benitec, 495 F.3d 1340. The Court must therefore determine whether, under the facts and circumstances of this case, the covenant not to sue extinguishes any actual case or controversy between the parties.

Here, plaintiff has given a covenant not to sue defendants for infringement of the '846 patent "based on [defendants'] manufacture, importation, use, sale, and/or offer for sale, of products on or before March 23, 2007." See Pl.'s Mot. Dismiss at 3. Plaintiff also "unconditionally covenants not to sue [defendants] for infringement of the ['846 patent] based on [defendants'] future manufacture, importation, use, sale, and/or offer for sale, of any and all products being offered for sale on www.bamboopet.com/all_products/grooming/, [defendants'] website, as of March 23, 2007." Id. Plaintiff offers the same covenants with respect to its claimed trademark in the term "deshedding."

Defendants contend the covenant not to sue is inadequate to divest the Court of jurisdiction over its declaratory judgment counterclaims because the covenant is limited to products offered for sale on defendants' website as of March 23, 2007. Defendants contend that the covenant excludes "at least one product" that plaintiff knows defendant has sold and intends to sell in the future, specifically a grooming tool identified in a letter to plaintiff's counsel from defendants' outside patent counsel. (See Letter from John L. Knoble to Alan H. Norman of Feb. 22, 2007, Ex. 2 to Defs.' Mem. Opp. Mot. Dismiss (the "Knoble letter")). Attached to the Knoble letter are photographs showing

the grooming tool referenced in the letter. In supplemental briefing, defendants state that a "similarly-configured product" to that shown in the Knoble letter attachment is now being sold by Munchkin on its website.

Plaintiff replies that the covenant not to sue does not exclude any products, and that the product identified by defendants is not at issue in this lawsuit. Plaintiff states that the covenant not to sue releases defendants from liability for all infringements of the patent-in-suit occurring on or before the date of the covenant, and does not exclude any products or infringing activities. Plaintiff states that its complaint identifies and contains photographs only of the defendants' grooming tools discussed at the preliminary injunction hearing (the "Munchkin tools"), and that defendants' counterclaim is similarly limited to the Munchkin tools. Finally, plaintiff states that its covenant not to sue addresses <u>all</u> prior sales by defendants prior to March 23, 2007, and therefore would include any sales of the alleged new product referenced in the Knoble letter of February 22, 2007.[7]

---

[7]The out-of-focus photographs attached to the Knoble letter show a grooming tool which does not resemble, in overall appearance and image, any of the grooming tools offered for sale on defendants' website as of March 2007. The grooming tool is dark, with no identifying markings. In contrast, all the grooming tools shown on the defendants' website are red and white, and most if not all prominently display the name "Bamboo." <u>See</u> Ex. A to Pl.'s Mot. Dismiss. The black grooming tool is not discussed in defendants' declaratory judgment counterclaims, which are limited to the Bamboo "Cat deshedding tool" and "Dog deshedding tool." The dark grooming tool has a handle, while the deshedding tools do not.

Defendants' supplemental briefing shows a grooming tool called a "FurBuster™ Deshedding Tool," which is red and white and displays the Bamboo name. In addition to color differences, the FurBuster™ product appears to differ from the product referenced in the Knoble letter because the FurBuster™ comes with three interchangeable blades of differing width. The FurBuster™ product was not identified in the complaint or defendants' counterclaim, and was not at issue during the claim construction proceedings in this matter. The Court notes there is no item number shown for the FurBuster™ tool in defendants' exhibit. Defendants have not submitted any evidence, as opposed to mere representations in their brief, to establish that this product is being sold, and if so, when sales began.

As a result of the covenant not to sue, defendants have no potential liability under the '846 patent for their manufacture, importation, use, sale and/or offer for sale of all products on or before March 23, 2007. Defendants also have no potential liability for their future manufacture, importation, use, sale and/or offer for sale of all products shown on their website as of March 23, 2007. The record before the Court on initial briefing shows that defendants claim to have sold at least one product before February 2007 that was not shown on their website as of March 23, 2007, and intend to sell something similar to that product in the future.

Based on defendants' proposed amended declaratory judgment counterclaims, it appears defendants contend they could be subject to claims of infringement concerning the product identified in the Knoble letter under another patent owned by plaintiff which is not at issue in this case, U.S. Patent No. 7,077,076 B2 ("the '076 patent").[8] The Court takes judicial notice that plaintiff filed two lawsuits in this district alleging infringement of both the '846 and '076 patents, but did not name Bamboo or Munchkin, Inc. as defendants in either case.[9]

In the instant matter, unlike the SanDisk case on which defendants rely, there is no evidence plaintiff has made a demand to the defendants that identifies how any new product infringes specific claims of any of plaintiff's patents, much less the '846 patent, which is the only patent-in-suit. Cf. SanDisk, 480 F.3d at 1382 (prior to the filing of the complaint, patent holder presented the

---

[8]See proposed Answer, Defenses and Amended Counterclaims of Defendants Bamboo and Munchkin, Inc., Counts XI-XII, attached as an exhibit to defendants' motion for leave to file amended counterclaims.

[9]See Furminator v. Ontel Products Corp., No. 4:06-CV-1294 CAS (E.D. Mo.) ("Furminator II"), and Furminator v. Kim Laube & Co, Inc., No. 4:06-CV-1314 RWS (E.D. Mo.) ("Kim Laube"). The Furminator II case was settled and closed on June 29, 2007. Furminator II, No. 4:06-CV-1294 CAS (Doc. 63). Plaintiff has filed a motion to voluntarily dismiss its claims and the defendant's counterclaims in the Kim Laube case. The motion remains pending at this time before the Honorable Rodney W. Sippel. See Kim Laube, No. 4:06-CV-1314 RWS (Docs. 53, 57).

declaratory judgment plaintiff with "a detailed presentation which identified, on an element-by-element basis," the manner in which the patentee believed that the plaintiff's products infringed specific claims of the patentee's patents). Nor is there any evidence that plaintiff has asserted that defendants are engaged in present, ongoing infringement of the '846 or any other patent, or demanded that defendants license the patents, as occurred in SanDisk. Cf. id. Most importantly, unlike the present case, there was no covenant not to sue in SanDisk, but rather merely the oral statement of the patentee's vice president at a business meeting that it did not intend to sue at that time. Id. at 1382-83. Indeed, the Federal Circuit has distinguished the facts of SanDisk, on the basis that a mere oral statement of intent not to sue during negotiations was not of comparable probative value to a written covenant not to sue for infringement in the future. See Benitec, 495 F.3d at 1347-48.

The instant case is readily distinguishable from Sony Electronics, in which the Federal Circuit concluded that an actual case or controversy sufficient for purposes of declaratory judgment existed. Unlike Sony Electronics, there is no evidence in this case that plaintiff has explicitly identified the patents it believes the defendants are infringing, the relevant claims of those patents, or the relevant product that it alleges infringes those patents. Cf. Sony Electronics, 497 F.3d at 1285. Nor is there evidence plaintiff has asserted that it is entitled to royalties under its patents based on specific past and ongoing activities by defendants without a license. Id. at 1286. The only similarity between this case and Sony Electronics is that the defendants in both cases asserted claims of patent invalidity based on certain identified prior art references. Id. A claim of invalidity based on prior art, however, cannot serve as a basis for declaratory judgment jurisdiction, as it does not establish the existence of

an actual controversy between the parties of sufficient immediacy and reality to warrant declaratory relief.

Here, plaintiff has given defendants a covenant not to sue which is as broad as the covenant that the Federal Circuit found sufficient to destroy any actual case or controversy for purposes of declaratory judgment in Benitec. See Benitec, 495 F.3d at 1343 (patent holder covenanted "not to sue [alleged infringer] for patent infringement arising from activities and/or products occurring on or before the date dismissal was entered in [the] action[.]").  Plaintiff's covenant covers all of the products manufactured, imported, used, sold, and/or offered for sale by defendants before March 23, 2007.  Plaintiff has therefore covenanted not to sue defendants for past or current infringement of the '846 patent or the "deshedding" mark by any of its products offered for sale prior to March 23, 2007. This covenant not to sue weighs strongly against the finding of the existence of a "substantial controversy, between parties have adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." See Md. Cas., 312 U.S. at 273.

The Court concludes that defendants' assertions in the initial briefing that they sold "at least one" new product as shown in the Knoble letter, which may infringe a patent other than the '846 patent, does not present a substantial controversy of sufficient immediacy and reality to warrant declaratory relief.  The '846 patent is the only patent-in-suit and the only products at issue in this case are the Munchkin tools.  Defendants may not expand the scope of this case to obtain an advisory declaratory ruling with respect to a product based on a controversy involving another product.  Cf. Sierra Applied Sciences, Inc. v. Adv. Energy Indus., Inc., 363 F.3d 1361, 1374 (Fed. Cir. 2004) ("Where, as here, a declaratory-judgment plaintiff attempts to ground jurisdiction on activities involving distinct, technologically different products, the court must carefully calibrate its analysis to

each of the products. To do otherwise would risk issuing an advisory opinion on one product--or on a method using that product--based on an actual controversy involving another product").

Further, there is no actual controversy with respect to the new product as shown in the Knoble letter because the covenant not to sue addresses all prior sales by defendants which occurred before March 23, 2007. Because the Knoble letter is dated February 22, 2007 and refers to a sale that has already occurred, the covenant not to sue releases defendants from any potential liability for that sale. Defendants do not contend in their supplemental briefing that the product shown in the Knoble letter is being sold or that they have plans to sell that product.

Defendants assert for the first time in their supplemental briefing (Doc. 158) that plaintiff would contend the FurBuster™ product infringes on the '846 patent-in-suit. As with the product discussed in the Knoble letter, the FurBuster™ is a product distinctly different from the Munchkin tools, is not at issue in the pleadings of this case, and was not addressed during claim construction. Defendants have not offered any evidence of documented claims of infringement or threats of litigation by plaintiff concerning the FurBuster™, or demands for licensing of the FurBuster™ under the '846 patent. Defendants also have not offered any evidence that they have sold any FurBuster™ products, before or after March 23, 2007. To the extent defendants sold any FurBuster™ products prior to March 23, 2007, plaintiff has covenanted not to sue defendants for infringement based on such sales.

The Court concludes that defendants have not their burden to show that they are engaged in any present activity that could subject them to a claim of infringement by plaintiff. Defendants have also not shown that plaintiff has taken a position that puts them "in the position of either pursuing arguably illegal behavior or abandoning" that which defendants claim a right to do. See SanDisk, 480

F.3d at 1381. In other words, defendants have not shown that their new product establishes the existence of a controversy that meets the immediacy and reality requirement of MedImmune.

In a recent district court decision, Crossbow Technology, Inc. v. YH Technology, 2007 WL 2408879 (N.D. Cal. Aug. 21, 2007), the plaintiff moved to dismiss its infringement claims with prejudice and the alleged infringer's declaratory judgment claims without prejudice after the Supreme Court's decision in Microsoft Corp. v. AT & T Corp., __ U.S. __, 127 S. Ct. 1746 (2007).[10] The plaintiff gave the alleged infringer a covenant not to sue for past or current infringement of the relevant '622 patent by any of the alleged infringer's products. The court rejected the alleged infringer's contention that the covenant not to sue was meaningless because it failed to address all of the products at issue in the case. 2007 WL 2408879, at *4. The Court concluded that although the covenant not to sue was not as broad as the one given in Benitec, it was exhaustive of all potentially infringing products on which the plaintiff could sue. Id.

The alleged infringer in Crossbow Technology also argued that because the patentee owned a family of patents related to the patent-in-suit, an actual controversy continued to exist as the plaintiff could still sue on the related patents even if the pending lawsuit was dismissed. The district court rejected this argument because (1) the plaintiff had both dismissed its infringement claim and covenanted not to sue, and (2) the alleged infringer had only filed a declaratory judgment concerning the '622 patent and not the related patents, and therefore the pending case only concerned the '622 patent. 2007 WL 2408879, at *5. The court concluded that despite the existence of related patents,

_____

[10]The Microsoft decision held that a company is not liable pursuant to 35 U.S.C. § 271(f) for developing software in the United States and exporting it to a foreign country to be copied and incorporated into an infringing product. 127 S. Ct. at 1753-54.

the covenant not to sue was sufficient to remove any "actual controversy" from the case. Id. Based on the record before this Court, the same result is proper here.

In supplemental briefing, defendants raise the new argument that their counterclaims should not be dismissed because the case has been "extensively litigated," relying on Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1342 (Fed. Cir. 2005). The Fort James case is readily distinguishable and does not compel jurisdiction here. In Fort James, the plaintiff's infringement claims on three patents and the defendant's counterclaims of invalidity and noninfringement went to trial before a jury. The defendant's unenforceability counterclaim was bifurcated to be tried by the court following the jury trial. Fort James, 412 F.3d at 1344. The jury found that one of the patents-in-suit was neither invalid nor infringed, and the plaintiff then promised not to sue the defendant on any of the three patents for products the defendant currently or previously manufactured. Id. at 1345. The defendant, however, wished to pursue its unenforceability counterclaim. Id. The Federal Circuit concluded in the "unique procedural posture" of the case that the plaintiff's promise not to sue had no effect on its claim for infringement, which had been resolved by the jury's verdict, and the jury's verdict did not moot the counterclaim of unenforceability or divest the court of jurisdiction to hear it. Id. at 1348.

In Benitec, the Federal Circuit distinguished Fort James and found that it did not compel declaratory judgment jurisdiction over counterclaims of invalidity and unenforceability despite a covenant not to sue, because "no trial of the infringement issue has taken place" and instead the plaintiff requested the voluntary dismissal of its claims "before a trial and the considerable effort connected therewith had taken place." Benitec, 495 F.3d at 1347. Fort James is similarly distinguishable from the instant case because no trial of the infringement issue has taken place here.

The Court's preliminary claim construction rulings are not comparable to a jury verdict of noninfringement, as they do not conclusively establish that defendants would have prevailed on the merits. Further, although the parties have certainly expended time and effort in this case, the Court disagrees with the characterization that it has been "extensively litigated." There has been no Rule 16 scheduling conference, and apart from the discovery permitted in connection with the claim construction hearing (see Prehearing Order of January 27, 2006 [Doc. 26]), there has been no general discovery schedule or trial date established in this case. The case was on file approximately six weeks when the claim construction hearing was held on February 14, 2006, was stayed in April 2006 pending the interlocutory appeal, and remained stayed until February 2007. Plaintiff then sought leave to dismiss in March 2007.

## II.

Defendants also contend there is evidence of an actual controversy sufficient to justify declaratory relief because David and Angela Porter, the named inventors of the '846 patent and principals of Furminator, threatened Munchkin's president with another patent infringement suit at a trade show in February 2007. Defendants submitted the Declaration of Steven B. Dunn, which states that he initiated a conversation with the Porters at the trade show, and Angela Porter stated that plaintiff "has additional patents" and "further verbally threatened Munchkin with a new patent infringement suit under the additional 'patents.'" (Dunn Decl., Ex. 3 to Defs.' Mem. Opp. Mot. Dismiss). In response, plaintiff submitted the separate declarations of David and Angela Porter, which state in pertinent part, "At no time during our conversation with Mr. Dunn with any FURminator employee or officer (including my wife[/husband] and I) threaten Mr. Dunn with suit." (Porter Decls., Exs. 1 and 2 (Doc. 149)).

The Court finds that the alleged threat of suit by the Porters does not create an actual case or controversy. As discussed above, there is no allegation that the Porters (1) made any specific assertions that defendants' new product infringes the claims of any of their patents, (2) made a demand for defendants to license the new product, or (3) attempted to enter into negotiations with the defendants concerning either claims of infringement or demands for licensing for the new product.

To the extent the Court assumes for purposes of this opinion that the Porters did threaten Munchkin's president with further litigation in February 2007, such a threat would appear hollow in light of the fact that plaintiff sued other parties, but not these defendants, on claims of infringement of both the '846 and '076 patents, and has now either settled or sought to dismiss the other suits. More importantly, after the date of the alleged threat, plaintiff gave defendants the covenant not to sue, which unequivocally establishes that plaintiff will not pursue claims for infringement of the '846 patent based on defendants' activities prior to March 23, 2007, and based on defendants' products offered for sale on their website as of that date. As did the Federal Circuit in SanDisk, the Court gives more weight to action than words: the fact that plaintiff has given defendants a covenant not to sue outweighs the non-specific, and disputed, allegations of an oral threat to sue.

The Court therefore concludes that the alleged threat by the Porters in February 2007 of unspecified future litigation does not establish the existence of a substantial controversy between the parties, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

As a result of the foregoing, the Court concludes that plaintiff's covenant not to sue destroys this Court's subject matter jurisdiction over defendants' declaratory judgment counterclaims because it eliminates the case or controversy raised in those counterclaims, and the same should therefore be

dismissed without prejudice. Consequently, defendants' motion for summary judgment on their declaratory judgment counterclaim of invalidity should be denied as moot.

### C. Plaintiff's Motion to Voluntarily Dismiss its Claims Under Rule 41(a)(2)

Although the Court has determined that the covenant not to sue deprives it of subject matter jurisdiction over defendants' declaratory judgment counterclaims, the covenant does not deprive the Court of jurisdiction to determine the disposition of plaintiff's patent infringement claims under Rule 41(a)(2). See Highway Equip. Co., Inc. v. FECO, Ltd., 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006). Because the propriety of dismissal under Rule 41(a)(2) is a procedural matter not specific to patent law, the Court applies the law of the Eighth Circuit to determine this issue. See Madey, 307 F.3d at 1358; see also Highway Equip., 469 F.3d at 1034 (discussing the application of Eighth Circuit law to discretionary dismissal of patent claims under Rule 41(a)(2) following a covenant not to sue).

A motion to dismiss an action under Rule 41(a)(2) is addressed to the sound discretion of the district court. Herring v. City of Whitehall, 804 F.2d 464, 466 (8th Cir. 1986). In reviewing a motion to dismiss under Rule 41(a)(2), a court should evaluate "factors such as the reasons for seeking the dismissal, whether the result would be a waste of judicial time and effort, and whether the dismissal will prejudice the defendants. A party may not dismiss simply to avoid an adverse decision or seek a more favorable forum." Cahalan v. Rohan, 423 F.3d 815, 818 (8th Cir. 2005) (citing Hamm v. Rhone-Poulenc Rorer Pharm., Inc., 187 F.3d 941, 950 (8th Cir. 1999). A court may also consider whether the motion to dismiss is presented late in the proceedings. See Williams v. Ford Motor Credit Co., 627 F.2d 158, 160 (8th Cir. 1980). Further, "While a pending motion for summary judgment is a factor the court may take into account when considering whether to grant a motion for voluntary dismissal, it is not by itself dispositive." Metropolitan Fed. Bank of Iowa,

<u>F.S.B. v. W. R. Grace & Co.</u>, 999 F.2d 1257, 1262 (8th Cir. 1993). "Voluntary dismissal under Rule 41(a)(2) should not be granted if a party will be prejudiced by the dismissal." <u>Id.</u> A court may attach "such terms and conditions" to the granting of a motion for voluntary dismissal as it "deems proper." <u>See</u> Rule 41(a)(2).

Plaintiff states that it gave the covenant not to sue and seeks to dismiss its case for pragmatic reasons, based on the Court's preliminary injunction rulings which held that plaintiff did not establish a likelihood of success on the merits and was not likely to establish that defendants infringed the '846 patent or plaintiff's claimed "deshedding" trademark in connection with their sales of the dog and cat grooming tools referred to the complaint. Plaintiff states that although the Court's claim construction rulings were preliminary, its findings were critical in plaintiff's decision to dismiss the action, and once it reached that decision, it decided to dismiss its claims promptly to conserve the resources of both the Court and the parties.

Plaintiff asserts that the proposed dismissal is not a waste of judicial resources and will not prejudice the defendants, but rather "greatly simplifies this matter." Mot. Dismiss at 2. Plaintiff states that the Court will not be required to conduct a <u>Markman</u> hearing or resolve defendants' pending motion for summary judgment, thus conserving judicial resources. Plaintiff states that as a result of the dismissal and its covenant not to sue, defendants cannot be in fear that plaintiff will refile this action at a later date, and therefore will suffer no legal prejudice.

Defendants oppose the voluntary dismissal. Defendants challenge plaintiff's reasons for seeking the dismissal, and assert that a dismissal would waste defendants' and the Court's resources, and would prejudice the defendants. Defendants contend that "the only possible motivating factor" in plaintiff's decision to dismiss its action is "to avoid invalidation of its '846 patent." (Defs.' Mem.

Opp. Mot. Dismiss at 7).  Defendants contend that the Court's findings in connection with the denial of plaintiff's motion for preliminary injunction show that the limitations of the claims in the '846 patent were present in the prior art and the claimed method was well known by pet groomers in the United States for years before the patent application was filed, but plaintiff knew of and failed to disclose the prior art to the Patent Office.  (Id. at 7).

Defendants contend that granting the motion to dismiss its declaratory judgment counterclaims would waste judicial time and the parties' resources, because as a result of plaintiff's persistence "in going forward with this baseless action in the face of overwhelming evidence of non-infringement . . . [defendants] had no choice but to move for summary judgment of invalidity." (Defs.' Mem. Opp. Mot. Dismiss at 8).  Defendants also contend that the Court will be required to address patent validity issues in connection with its non-declaratory judgment counterclaims, over which it will retain jurisdiction.[11]

Finally, defendants assert that if the Court were to grant plaintiff's motion to dismiss, it should exercise its discretion under Rule 41(a)(2) to condition the dismissal on the payment by plaintiff of

---

[11]Defendants' contention that they would be prejudiced if their declaratory judgment counterclaims are dismissed because they will "lose the benefit and protection" they would have gained "by invalidating the '846 patent and the purported trademark," Mem. Opp. Mot. Dismiss at 9, is moot in light of the Court's conclusion that the covenant not to sue eliminated subject matter jurisdiction over the declaratory judgment counterclaims.

Defendants also assert that the plain language of Rule 41(a)(2) precludes plaintiff's motion to dismiss because such a dismissal would violate the Rule's prohibition against dismissing an action over a defendant's objection where a counterclaim had previously been filed, unless the counterclaim could remain pending for independent adjudication.  This assertion is unpersuasive because defendants' counterclaims are being dismissed for lack of subject matter jurisdiction based on the covenant not to sue, not as a result of plaintiff's motion to voluntarily dismiss under Rule 41(a)(2). See Merck & Co., Inc. v. Watson Labs, Inc., No. C.A. 05-658, 2006 WL 1537375, at *3 (D. Del. June 2, 2006) ("Article III of the United States Constitution . . . trumps the Federal Rules of Civil Procedure.").

defendants' reasonable attorneys' fees. Otherwise, defendants state, plaintiff will be rewarded for abusing the litigation process by "filing baseless lawsuits against competitors for the purpose of gaining an unfair competitive advantage[.]" (Defs.' Mem. Opp. Mot. Dismiss at 11).

The Court's examination of the relevant factors leads it to conclude, in the exercise of its discretion, that plaintiff's motion to voluntarily dismiss its claims without prejudice should be granted. Plaintiff's stated reason for seeking the dismissal, that the Court's preliminary claim construction ruling undercut its case and led it to re-evaluate this litigation in pragmatic terms, is a valid reason for dismissal. It makes economic sense for a party to seek settlement or dismissal of its infringement claims after a preliminary court ruling which indicates the claims are unlikely to succeed, and such action serves to minimize the resources expended by the Court and the parties by avoiding likely motion practice and trial. See, e.g., Benitec, 495 F.3d 1340 (district court properly dismissed plaintiff's infringement claims and the alleged infringer's declaratory judgment counterclaims without prejudice after the plaintiff concluded it had no viable infringement claims against the defendant after the Supreme Court's decision in Merck, 545 U.S. 193); Crossbow Technology, 2007 WL 2408879 (district court granted plaintiff's motion to dismiss its infringement claims with prejudice and the alleged infringer's declaratory judgment claims without prejudice after the Supreme Court's decision in Microsoft, 127 S. Ct. 1746). Although the plaintiffs in Benitec and Crossbow sought to dismiss their claims as a result of Supreme Court rulings in other cases rather than rulings in their own cases, the reasoning is the same. In this case, plaintiff sought and received an early ruling with respect to claim construction. When plaintiff received a preliminary ruling that was unfavorable and failed to obtain reversal on appeal, it promptly reevaluated the litigation and concluded it was no longer in its interests to continue to prosecute it.

The Court also concludes that dismissal would not result in the waste of judicial time and effort. The Court has expended certain resources on this case to date, and presumably will continue to do so with respect to defendants' non-declaratory judgment counterclaims. The Court does not, however, foresee that a full analysis of the issues of patent invalidity and unenforceability will be necessary to resolve the remaining state law tort-based counterclaims. The Court will therefore conserve significant resources which it would have expended on a Markman hearing, motion practice and trial of plaintiff's claims and defendants' declaratory judgment counterclaims.

The Court rejects defendants' assertion that the preliminary claim construction rulings "show that the limitations of the claims of the '846 patent were present in the prior art" and that the inventors "had knowledge of and failed to disclose material prior art." (Mem. Opp. Mot. Dismiss at 7). Defendants' assertion reads too much into the preliminary rulings with respect to prior art. The Court's factual findings merely acknowledged the evidence presented at the hearing concerning the existence and prior use of stripping knives and electric clipper blades wrapped with a tape handgrip for pet grooming. The Court did not find that (1) the limitations of the claims in the '846 patent were present in the prior art, or (2) the plaintiff knew of and failed to disclose the prior art to the Patent Office. Defendants acknowledge but fail to afford adequate weight to the Court's express statement that it would not address defendants' arguments concerning the alleged invalidity or unenforceability of the '846 patent on the preliminary injunction motion. See Furminator, Inc. v. Ontel Prods. Corp., 429 F.Supp.2d 1153, 1175 (E.D. Mo. 2006). Further, defendants' assertion that invalidation of the '846 patent is "inevitable" is not justified at this point.

Although a court should consider the existence of a motion for summary judgment when considering a voluntary dismissal under Rule 41(a)(2), such a motion "is not by itself dispositive."

Metropolitan Fed. Bank, 999 F.2d at 1262; see Super Sack, 57 F.3d at 1055-56 (approving grant of motion to voluntarily dismiss case where summary judgment motion had been filed). In this case, the summary judgment motion is moot, because the Court no longer has jurisdiction over defendants' declaratory judgment counterclaim of invalidity.[12]

The Court has considered but disagrees with defendants' contention that the voluntary dismissal was requested too late in the proceedings. As stated above, the case was on file approximately six weeks when the preliminary injunction hearing was held on February 14, 2006, was stayed in April 2006 pending the interlocutory appeal, and remained stayed until February 2007. Plaintiff then sought leave to dismiss in March 2007. There has been no discovery schedule, no full briefing of any dispositive motions, and no trial. Plaintiff has acted promptly to seek an end to this litigation.

The Court concludes that defendants will not suffer legal prejudice if plaintiff's claims are dismissed without prejudice because they have the benefit of the covenant not to sue, and can assert their non-declaratory judgment counterclaims to seek their claimed damages resulting from plaintiff's conduct in pursuing this action. Although defendants urge the Court to follow Super Sack to the extent the plaintiff's claims therein were dismissed with prejudice, defendants have not cited and the

---

[12]Even if defendants' motion for summary judgment of invalidity was not moot, it would not be ready for ruling until significant further discovery had occurred. Defendants filed their motion for summary judgment less than ten days after the Federal Circuit issued its mandate and before this Court scheduled a Rule 16 conference, at which a discovery schedule and other deadlines would have been established. In the Joint Proposed Scheduling Plan ("JSP") (Doc. 139) filed in response to the Order Setting Rule 16 Scheduling Conference, the parties disagreed about how defendants' motion for summary judgment should affect on the further progress of the case, with plaintiff contending the motion was premature and defendants asserting that discovery should be stayed until the motion was decided. (See JSP at 1-2). The Court granted plaintiff's subsequent motion for an extension of time to respond to the summary judgment motion, and stated that no response was required until the Court ruled on the instant motion to dismiss. (See Docket Text Order of Mar. 26, 2007).

Court has not found any authority which mandates that patent infringement claims be dismissed with prejudice where the patent holder has given a covenant not to sue. Finally, the Court concludes that defendants' inability to pursue a claim for attorney's fees under the patent statute and the Lanham Act following dismissal without prejudice does not constitute legal prejudice under the circumstances present in this case.

The Court finds that plaintiff has presented a proper explanation for its motion to dismiss; although defendants have been required to expend considerable effort and expense in this matter, they have not been required to prepare for trial; plaintiff did not exhibit delay or lack of diligence either in prosecuting this action or in attempting to dismiss it; and although defendants filed a motion for summary judgment of invalidity, the Court finds that the motion is moot and was filed prematurely, and defendants' effort expended on it could have been avoided. See Paulucci v. City of Duluth, 826 F.2d 780, 783 (8th Cir. 1987) (discussing factors to be considered in deciding a Rule 41(a)(2) motion).

The Court declines to require plaintiff to pay defendants' attorneys' fees and costs as a condition of dismissal without prejudice. The covenant not to sue precludes the possibility of relitigation of this matter, and therefore an award of fees and costs, which is designed to protect defendants from the expense of defending an action again, is not required. Finally, to the extent it is relevant, the Court believes that plaintiff both commenced and conducted this action in good faith. The Court will, however, condition the dismissal on plaintiff's payment of defendants' reasonable attorneys' fees and costs of this action in the event plaintiff files suit in this Court again claiming infringement by Bamboo and/or Munchkin of the '846 patent for the products identified in the covenant not to sue.

For these reasons, plaintiff's motion to voluntarily dismiss all of its claims without prejudice pursuant to Rule 41(a)(2) will be granted.

## D. Defendants' Motion for Leave to File an Amended Counterclaim

Defendants have filed a motion for leave to file amended counterclaims to add Counts XI through XII, which seek a declaration of noninfringement, invalidity and unenforceability of the '076 patent, "based on threats of infringement suits made by [plaintiff's] principals against Munchkin after the institution of this lawsuit." Defs.' Mot. for Oral Argument at 2, ¶ 4. Plaintiff opposes the motion.

Whether a party should be permitted to amend its counterclaims is a procedural matter that is not specific to patent law, and the Court applies the law of the Eighth Circuit to determine this issue. See Madey, 307 F.3d at 1. Although leave to amend is to be freely granted under Federal Rule of Civil Procedure 15(a), the Court has discretion whether or not to grant leave to amend. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-32 (1971). Factors to consider in determining whether leave to amend should be granted include but are not limited to (1) whether the motion was filed in bad faith or with dilatory motive; (2) whether the motion was filed with undue delay; (3) whether leave to amend would be unduly prejudicial to the opposing parties; and (4) whether the proposed amendment would be futile. See Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 224 (8th Cir. 1994).

In support of the motion for leave to amend, defendants assert that since the commencement of this action, plaintiff has threatened to enforce the '076 patent against them. As discussed supra, defendants contend they informed plaintiff that they sold at least one product as disclosed in the Knoble letter of February 21, 2007, and intend to sell such products in the future, and that David and Angela Porter threatened Munchkin's president with suit under "additional patents" at a trade show

in February 2007. Defendants contend that as a result, they are "apprehensive [they] will imminently be sued under the '076 patent." Mot. for Leave to Amend at 2, ¶ 8. Defendants contend that the Porters' threats coupled with the prior lawsuit against defendants creates a justiciable controversy sufficient to support declaratory judgment jurisdiction under 28 U.S.C. § 2202, citing San Disk, 480 F.3d 1372.

Plaintiff opposes leave to amend on the basis that no declaratory judgment jurisdiction exists with respect to the '076 patent. Plaintiff asserts that defendants' attempt to add the '076 patent to this suit is futile and nothing more than an attempt to gain an advisory opinion concerning the '076 patent. Plaintiff argues that the Court lacks subject matter jurisdiction over the proposed declaratory judgment counterclaims because there are no patents currently in controversy as a result of the covenant not to sue, and there is no actual controversy between the parties regarding the '076 patent. Plaintiff argues that the facts of this matter are readily distinguishable from those of SanDisk, and do not give rise to declaratory judgment jurisdiction.

Defendants reply that the evidence they have presented clearly demonstrates that leave to amend should be granted because their claims related to the '076 patent present an actual justiciable controversy between the parties with a history of litigation between them, under the Federal Circuit's SanDisk and Teva decisions, and Crutchfield New Media, LLC v. Charles E. Hill & Assocs., Inc., No. 1:06-CV-837, 2007 WL 1320750 (S.D. Ind. May 4, 2007).

The Court finds that defendants' motion for leave to file amended declaratory judgment counterclaims should be denied as futile. The proposed amended counterclaims seek to inject both a new patent and new product into this action, and the Court concludes they do not present an actual case or controversy of sufficient immediacy to warrant declaratory relief. In the motion for leave to

33

amend and proposed counterclaims, defendants claim to have sold "at least one" product that was not shown on their website as of March 23, 2007, referring to the product discussed in the Knoble letter, and claim they intend to sell similarly-configured products in the future. For the same reasons discussed above in connection with plaintiff's motion to dismiss the original declaratory judgment counterclaims, the new product and alleged threat by the Porters do not suffice to present a substantial controversy of sufficient immediacy and reality to warrant declaratory relief. Also as discussed above, defendants do not contend that plaintiff has (1) made any specific assertions that defendants' new product infringes the claims of the '076 patent, (2) made a demand for defendants to license the new product, or (3) attempted to enter into negotiations with the defendants concerning either claims of infringement of the '076 patent or demands for licensing for the new product. Thus, plaintiff has not engaged in actions that put defendants in the position of having to either pursue arguably illegal behavior or abandon activities in which they have the right to engage.

The SanDisk case on which defendants rely is distinguishable from this case. As stated above, there is no evidence plaintiff has made a claim to the defendants that identifies how the new product infringes specific claims of the '076 patent. Cf. SanDisk, 480 F.3d at 1382 (prior to the filing of the complaint, patent holder presented the declaratory judgment plaintiff with "a detailed presentation which identified, on an element-by-element basis," the manner in which the patentee believed that the plaintiff's products infringed specific claims of the patentee's patents). There is no evidence plaintiff has asserted that the defendants are engaged in present, ongoing infringement of the '076 patent, or demanded that defendants license the patent, as occurred in SanDisk. Cf. id. Such facts were critical to the decision in that an actual case or controversy existed in SanDisk. Because similar facts are missing from this case, SanDisk does not support the defendants' position.

The Crutchfield decision cited by defendants is also distinguishable from this case. In Crutchfield, the patent holder, Hill, sent a three-page certified letter to Crutchfield providing Crutchfield with information about the content of Hill's patents, their file histories, selected pleadings in lawsuits Hill had filed in two federal district courts, a summary of Hill's licensees and covenantees under the patents in suit, and a summary of the extent to which Hill had litigated its right to the exclusive use of the patented technology. In the letter, Hill invited Crutchfield to take a license under the patents in suit and invited a response within a set period of time. 2007 WL 1320750, at *1. Crutchfield's attorney was aware of a public statement Hill had made regarding its intent to pursue further litigation against any business that sold through the Internet, and knew from personal experience that Hill had a pattern of filing suit in the Eastern District of Texas against companies without warning. Id.

Crutchfield filed a declaratory judgment action against Hill, seeking declarations of noninfringement of Hill's patents. Hill moved to dismiss for lack of subject matter jurisdiction. Based on the facts as described above, the district court found that an actual controversy of sufficient immediacy and reality existed over the declaratory judgment action under the MedImmune standard. The district court stated:

> The content of the May 2006, letter, including the clear articulation of Hill's willingness to litigate against potential infringers of the patents in suit, its offer of a license to Crutchfield under its patents, and its request for a response by a date certain, indicate to any reasonable reader that a substantial controversy exists between parties with adverse legal interests and it is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Furthermore, Crutchfield's counsel had first-hand knowledge of Hill's patent enforcement tactics and self-proclaimed goals. Coupled with the letter, Crutchfield was faced with a decision to agree to a license or seek a declaration that it does not infringe or that the patents in suit were invalid.

2007 WL 1320750, at *2. The evidence offered by defendants in support of their proposed counterclaims with respect to the '076 patent is not comparable to the specific demands made by the patent holder in the Crutchfield case. Therefore, Crutchfield does not offer persuasive support for defendants' position.

The Teva case defendants cite is also distinguishable, in particular because it concerned pharmaceutical patents that were governed by a different statute which encourages the prompt resolution of patent disputes. 482 F.3d 1330. In Teva, the plaintiff filed an Abbreviated New Drug Application ("ANDA") with the FDA for the generic form of a drug on which the defendant, Novartis, held five patents. As part of the ANDA, Teva certified that its drug did not infringe any of the Novartis patents or that the patents were invalid, which is known as a "paragraph IV certification." Paragraph IV certifications, alone, constitute technical patent infringement under 35 U.S.C. § 271(e). Under the applicable statute, Novartis had 45 days to sue on its patents in order to invoke a statutorily-mandated thirty-month stay to delay immediate FDA approval of Teva's ANDA. Id. at 1335. Novartis filed an infringement suit against Teva on its composition patent, but not its four method patents. Teva then brought a separate declaratory judgment suit in a different court on the four Novartis method patents under 21 U.S.C. § 355(j)(5)(C) and 35 U.S.C. § 271(e)(1) to establish "patent certainty."[13]

_____

[13]Title 21 U.S.C. § 355(j)(5)(C) is a 2003 amendment to the ANDA statute entitled "civil action to obtain patent certainty." Under this provision, if the patentee or NDA [New Drug Application] holder does not bring an infringement suit within 45 days after receiving notice of a paragraph IV certification, the ANDA applicant may bring a civil action for a declaratory judgment that the patent at issue is invalid or will not be infringed by the drug for which the ANDA was submitted. Id. Title 35 U.S.C. § 271(e)(5) is a 2003 amendment to the patent statute that works in conjunction with the 2003 amendment to the ANDA statute to provide that in a civil action to obtain patent certainty, federal courts "shall, to the extent consistent with the Constitution, have subject matter jurisdiction in any action brought . . . under

Applying the MedImmune standard, the Federal Circuit concluded that an Article III case and controversy existed between the parties because, although Novartis had only sued Teva under one of its patents, that suit placed Teva's ANDA into actual dispute. Teva, 482 F.3d at 1340. The court concluded that while Teva's declaratory judgment action and Novartis' infringement action were different cases, they arose from the same controversy that was created when Novartis listed its patents with the FDA, Teva submitted its ANDA certifying all five patents under paragraph IV, and Novartis sued Teva challenging the submission of Teva's ANDA. Id. at 1341.

`        Novartis had the immediate right to bring suit on the other four patents, at any time up until they expired. Thus, the Federal Circuit found that Teva remained under the threat of an infringement suit because the statute did not preclude Novartis from pursuing additional infringement suits. Id. The court also noted that Novartis' decision to sue only on one patent, the one with the earliest expiration date, was a strategic choice which prevented Teva's generic drug from entering the market until the expiration of the last patent, and was "directly contrary to the purpose of the 30-month stay" established by the statute. Teva, 482 F.3d at 1340, n.5 & 1343. The court concluded that in light of Novartis' pending infringement suit, the threat of litigation on the additional Novartis patents was a present injury creating a justiciable controversy. Id.

In this case, the defendants do not rely on a statute like the one at issue in Teva, which was designed to facilitate the prompt resolution of patent disputes over pharmaceuticals in order to encourage competitors to bring generic drugs to the market as soon as possible. See id. at 1344. As a result of this key distinction, Teva is not persuasive authority on the existence of a case or

---

§ 2201 of title 28 for a declaratory judgment that such patent is invalid or not infringed."

Teva, 482 F.3d at 1335.

controversy here. In addition, the party seeking dismissal of the declaratory judgment in <u>Teva</u> was the plaintiff in an ongoing patent infringement action against Teva and refused to give it a covenant not to sue. Here, plaintiff has given defendants a covenant not to sue on the '846 patent and, as discussed above, there is insufficient evidence of an actual case or controversy concerning the '076 patent.

Based on the foregoing, the Court concludes that defendants' motion for leave to file their proposed amended declaratory judgment counterclaims on the '076 patent should be denied as futile, as the proposed counterclaims do not present an actual case or controversy of sufficient immediacy or reality to warrant declaratory relief under the <u>MedImmune</u> standard.

**<u>Conclusion</u>**.

For the foregoing reasons, the Court concludes that plaintiff's covenant not to sue destroys this Court's subject matter jurisdiction over defendants' declaratory judgment counterclaims because it eliminates the case or controversy raised in those counterclaims, and the same should therefore be dismissed without prejudice. As a result, defendants' motion for summary judgment of invalidity should be denied as moot. The Court also concludes, in the exercise of its discretion, that plaintiff's motion to voluntarily dismiss all of its claims without prejudice should be granted. Defendants' motion for leave to amend their counterclaims should be denied as futile because the proposed declaratory judgment counterclaims do not present an actual case or controversy of sufficient immediacy or reality to warrant declaratory relief. Defendants' motions for oral argument will be denied. Defendants' non-declaratory judgment counterclaims remain pending. The Court will set this matter for Rule 16 scheduling conference on the remaining claims by separate order.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to voluntarily dismiss its claims without prejudice and to dismiss the declaratory judgment counterclaims of defendants Bamboo and Munchkin, Inc. for lack of subject matter jurisdiction is **GRANTED**. [Doc. 142]

**IT IS FURTHER ORDERED** that defendants Bamboo and Munchkin, Inc.'s motion for summary judgment of invalidity is **DENIED as moot**. [Doc. 132]

**IT IS FURTHER ORDERED** that defendants Bamboo and Munchkin, Inc.'s motion for leave to file amended counterclaims is **DENIED**. [Doc. 151]

**IT IS FURTHER ORDERED** that defendants Bamboo and Munchkin, Inc.'s motions for oral argument on all pending motions are **DENIED**. [Doc. 150, 160]

**IT IS FURTHER ORDERED** that if plaintiff files a new action in this Court claiming patent and/or trademark infringement by Bamboo and/or Munchkin, Inc. of the '846 patent or the term "deshedding" in connection with the products identified in the covenant not to sue, plaintiff shall pay defendants' reasonable attorneys' fees and costs incurred in defending this action.

An appropriate order of partial dismissal will accompany this memorandum and order.


**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this __18th__ day of October, 2007.